STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-23-57

SEVERIN BELIVEAU, et al.,

    Plaintiffs

v.

                          ORDER

KEVIN MATTSON, et al.,

    Defendants

1:21 PM
STATE OF MAINE
Cumberland, ss, Clerk's Office

JUN 07 2023
RECEIVED

Before the court is a motion by plaintiffs Severin and Cynthia Beliveau for an attachment against defendants Kevin Mattson and Hailcore LLC.

Both plaintiffs seek an attachment against Mattson for $ 919,183.05 against Mattson[1] based on Mattson's guarantee of a note owed to the Beliveaus by defendant Hallowell House LLC. Plaintiff Severin Beliveau (hereafter "Beliveau") seeks an additional attachment of $ 248,770.99 against both Mattson and Hailcore based on another note owed to Beliveau by Mattson and guaranteed by Hailcore.

The Beliveaus' attachment motion is based solely on Counts I, V, and VI of their complaint. They have asserted other claims against Mattson in Counts II and III of the complaint, against defendant Hallowell House LLC in Count IV of the complaint, against Mattson and Hailcore in Counts VII and VIII of the complaint, and against Jeanne Mattson in Count IX of the complaint.

There is a pending motion to dismiss counts II, III, VII, and VIII.

---

[1] Kevin Mattson's spouse, Jeanne Mattson, is also a defendant, but no attachment is sought against her. All references to "Mattson" in this order therefore refer to defendant Kevin Mattson.

Legal Standard

Maine Rules of Civil Procedure 4A and 4B govern attachment and trustee process. An order of attachment may only be issued "upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R. Civ. P. 4A(c). The court bases its determination on "the merits of the complaint and the weight and credibility of the supporting affidavits." *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826. The affiants must "set forth specific facts sufficient to warrant the required findings" for a court to grant attachment or trustee process. M.R. Civ. P. 4A(i). "Because prejudgment attachment may operate harshly upon the party against whom it is sought, there must be strict compliance with the procedures prescribed by legislation and implemented by court rules." *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993).


Discussion

This lawsuit arises out of a series of business ventures and loans involving the Beliveaus, Mattson, and various corporate entities. The specific transactions that are the subject of the motion for attachment are set forth in Beliveau's affidavit, which recites that he and his wife are the holders of a $1.2 million note dated September 23, 2009 from Hallowell House that was guaranteed by Mattson (the "Hallowell House Guarantee"). Beliveau's affidavit establishes that it is more likely than not that Hallowell House has defaulted on the note, that $919,183.05 remains unpaid on the

2

note, that Mattson guaranteed Hallowell House's payments on the note, and that Mattson has not paid the unpaid amount pursuant to his guarantee.

Beliveau's affidavit also establishes by the requisite standard of proof that Beliveau is the holder of a $400,000 note (the "Round Pond Note") executed by Mattson on August 2, 2017 and guaranteed by Hailcore on August 13, 2017, that Mattson is in default on that note, that $248,770.99 remains unpaid, and that Hailcore has not paid that amount pursuant to its guarantee.

Finally, Beliveau's affidavit asserts that he is unaware of any insurance, bond or other security available to satisfy the anticipated judgments against Mattson and Hailcore.

Mattson's response to the motion, supported by his affidavit, is that on August 22, 2017, subsequent to the notes and guarantees on which the Beliveaus' motion for attachment is based, Beliveau and Mattson entered into an agreement governing Beliveau's exit from numerous and convoluted real estate transactions which Beliveau and Mattson had invested in through their ownership interests in various corporations (the "Exit Agreement"). The Exit Agreement includes a provision (Article V) whereby Mattson pledged various assets to secure and indemnify Mattson's obligations under the Exit Agreement. Mattson's affidavit further contends that although the Exit Agreement was a secured transaction under Article 9 of the U.C.C., Beliveau has not complied with the provisions of Article 9 before taking actions to collect on the various obligations owed to him, including the Hallowell House Guarantee, pursuant to the Exit Agreement. He contends that this constitutes a defense to the attachment motion because the unknown results of Beliveau's collection actions and the Article 9 violations make it impossible to determine more likely than not any amounts that may be owed on Mattson's guarantee of the Hallowell House note, any amounts owed on the Round Pond Note, and any amounts owed on Hailcore's guarantee of the Round Pond Note.

3

Beliveau's response, set forth in a reply memorandum filed in response to defendants' opposition to the attachment motion, is that the Article 9 violations asserted by Mattson, to the extent they could be found to have any potential validity, are only cognizable as counterclaims and that a defendant's potential recovery on a counterclaim is not considered in determining whether to grant a motion for an attachment. *Casco Northern Bank v. New England Sales Inc.,* 573 A.2d 795, 797 (Me. 1990).[2]

Mattson responded by moving to strike the Beliveaus' reply memorandum, contending that reply memoranda are not permitted under Rules 4A and 4B, which refer only to opposition material pursuant to Rule 7(c) and omit any mention of reply submissions under Rule 7(e).

Motion to Strike

To the extent that the Superior Court cases relied upon by Mattson stand for the proposition that reply submissions are not permitted on motions for attachment, the court disagrees. On a motion for attachment a forceful argument can be made that, if the opposing party objects, the court cannot consider any reply affidavits filed by the moving party or any other attempts by the moving party to add to the factual record after the opposition has been filed.[3] Nevertheless the court cannot see any reason why a moving party cannot seek to rebut legal arguments raised in the opposition papers. Rule 7(e) allows a reply memorandum to be filed within 14 days of "any memorandum in opposition to a motion" (emphasis added). Motions for attachment are not excluded.

---

[2] Mattson has asserted the alleged Article 9 violations both as an affirmative defense and as counterclaims.

[3] Otherwise it would be difficult not to allow further factual submissions submitted by the opposing party in response to the additional facts submitted in a reply affidavit.

4

In this case, therefore, the court shall consider the Beliveaus' argument that the facts set forth in Mattson's opposition are cognizable only as counterclaims and shall deny the motion to strike. The court shall, however, disregard any factual assertions in the reply memorandum.

Guarantee of Hallowell House Note

At the outset, the Exit Agreement appears to be a secured transaction subject to Article 9, as demonstrated by the fact that Beliveau filed a UCC Financing Statement. Mattson's affidavit also sufficiently establishes the existence of potential Article 9 violations. The remaining questions are whether Mattson's guarantee of the Hallowell House note is subject to the Exit Agreement and if so, whether the alleged violations provide Mattson with an affirmative defense or may only be asserted as counterclaims.

The Exit Agreement (Ex. A to Mattson's affidavit) is a complicated document covering a multiplicity of transactions. Article XIII of the Exit Agreement includes a guarantee by Mattson of the "Rangeley Loans." The Rangeley Loans in turn are defined in Exhibit B to the Exit Agreement (listed on numbered page 18 of that Agreement[4]) to include the loan by Beliveau to Hallowell House "for the acquisition and construction of the property at 99 Second Street" in Hallowell. As far as the court can tell, this is the loan that resulted in the Hallowell House note. Thus, Mattson appears to have guaranteed the original 2007 Hallowell House note and then assumed and guaranteed the same obligation in the Exit Agreement. Accordingly, the Hallowell House guarantee is subject to the Exit Agreement.

---

[4] Although page 18 appears to be out of order in the copy of the Exit Agreement filed with the court, it appears to be the second page of Exhibit B of that Agreement, listing loans guaranteed and assumed by Mattson.

5

Moreover, the court concludes that the potential Article 9 violations advanced by Mattson constitute an affirmative defense to Beliveau's claims based on the Hallowell House guarantee, not just a potential basis for counterclaims. This follows from 11 M.R.S § 9-1625(1), which provides that if a secured party is not proceeding in accord with Article 9, a court may "restrain collection" of any deficiency. *See Union Trust Co. v. Hardy,* 400 A.2d 384, 390 (Me. 1979).

Accordingly, on this record, the court cannot determine what amount, if any, plaintiffs are likely to recover based on the Hallowell House guarantee that forms the basis for Count I of their complaint. This defeats their motion for attachment based on the Hallowell House guarantee.

In addition, although Mattson has not explicitly raised this argument, it appears that the attachment motion may be denied as to the Hallowell House guarantee because the Exit Agreement and the pledges made thereunder constitute a potential form of security available to satisfy any anticipated amounts for which Mattson might otherwise be liable on the Hallowell House guarantee.

Round Pond Note and Guarantee

In contrast, the court cannot find any reference in the Exit Agreement to the Round Pond Note or Hailcore's guarantee of the Round Pond Note. Accordingly, those appear to be free-standing obligations on which Beliveau has demonstrated that he is more likely than not to recover $248,770.99. Accordingly, his motion for attachment and for trustee process shall be granted against both Mattson and Hailcore in that amount.[5]

---

[5] Given the nature of this case, and particularly given the complexity of the business transactions between Beliveau and Mattson, the undersigned is recommending that this case be transferred to the Business and Consumer Docket. This is with the concurrence of Justice Cashman, to whom this case will otherwise be reassigned.

6

The entry shall be:

1. The motion by defendants to strike the reply memorandum submitted by plaintiffs in support of plaintiffs' motion for attachment is denied.

2. Plaintiffs' motion for attachment and trustee process is granted in part and denied in part. Specifically, plaintiff Severin Beliveau is entitled to attachment and trustee process against defendants Kevin Mattson and Hailcore LLC in the amount of $ 248,770.99.

3. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 7 , 2023

Thomas D. Warren
Active Retired Justice, Superior Court

Entered on the Docket: 06/12/2023

**Plaintiffs-Randy Creswell, Esq.**
**Defendants-David Johnson, Esq.**

7